UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Wendell Maurice Clark,<br><br>                    Petitioner,<br><br>        v.<br><br>Scott Speer,<br><br>                    Respondent. | Case No. 3:24-cv-06036-DGE-TLF<br><br>REPORT AND RECOMMENDATION, AND ORDER DENYING APPOINTMENT OF COUNSEL<br><br>Noted for <u>November 19, 2025</u> |

The District Court has referred this action to United States Magistrate Judge Theresa L. Fricke. Petitioner Wendell Maurice Clark, proceeding *pro se*, has filed a federal Petition for writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254, seeking relief from his Clark County Superior Court convictions and sentence for rape in the second degree, domestic violence, and assault in the fourth degree, domestic violence; he raises seven grounds for relief. Dkt. 5; Dkt. 14-1 at 2-33 (Judgment and Sentence entered 6-28-2019, Clark County Cause No. 18-1-01142-6.

For the reasons discussed below, the Court recommends the federal habeas Petition (Dkt. 5) be **DENIED on all grounds** and a certificate of appealability not be issued. Petitioner's motion for appointment of counsel (Dkt. 23) is **DENIED,** as no evidentiary hearing is required.

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 1

# I.    BACKGROUND

A. <u>Factual Background</u>

In an unpublished opinion denying the Personal Restraint Petition (PRP) the Washington Court of Appeals summarized the facts of petitioner's case as follows:

> On the evening of April 21, [2018] Clark came over to S.V.'s apartment. S.V. shared the apartment with her teenage daughter, K.V. K.V. was at home the evening of April 21.
>
> In the early morning hours of April 22, Clark and S.V. engaged in consensual vaginal intercourse in S.V.'s bedroom. At some point during this encounter, Clark instructed S.V. to roll onto her stomach and, without asking or telling S.V., began engaging in anal sex with S.V. S.V. told Clark to stop and that she was in pain. S.V. attempted to push Clark off her, but Clark pinned S.V. down and continued to engage in anal sex with S.V. despite her protestations.
>
> Later, after Clark fell asleep, S.V. went to the bathroom and began texting her friend, Katie Davis. Davis encouraged S.V. to contact the police. Davis also texted K.V. and asked K.V. to check on S.V. K.V. estimated that Davis contacted her around 1:00 a.m. K.V. then knocked on S.V.'s door and asked if S.V. was okay. S.V. told K.V. that she was fine and instructed K.V. to go back to bed. K.V. noticed that S.V. "was acting kind of off" but thought nothing of it until the following morning, when S.V. continued to "act[] a bit off." 4 Verbatim Rep. of Proc. (VRP) (May 16, 2019) at 690.
>
> That afternoon, Clark discovered that his car had been towed from S.V.'s apartment complex. Clark was very angry his car had been towed; he believed that S.V. was responsible for not knowing her apartment complex's parking policy and he insisted that S.V. pay part of his tow bill. S.V. informed him that she did not have the money to do so. At some point during the argument, S.V. texted Davis about Clark's car getting towed. Clark and S.V.'s argument escalated, and S.V. asked Clark to leave because Clark began scaring her. Clark refused.
>
> After Clark refused to leave, S.V. told K.V. to go to the apartment of K.V.'s friend, who also lived in the same complex. S.V. then texted her neighbor, the mother of K.V.'s friend, to call 911. The police arrived. S.V. told the police she wanted Clark to leave and then disclosed that Clark had raped her the previous evening. The police arrested Clark and transported S.V. to the hospital for a sexual assault examination.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

[…]
　　　The State charged Clark with rape in the second degree, assault in
the fourth degree, and tampering with a witness, all with domestic violence
designations. 3 The case went to trial in May 2019.
　　　[…]
　　　The jury found Clark guilty of second degree rape and fourth
degree assault, both with DV designations. The jury acquitted Clark of the
tampering with a witness charge.

Dkt. 14-3, State Court Record, at 85 (Personal Restraint Petition Opinion, Court
of Appeals Cause No. 57695-3-II).

   B.  Procedural Background

    1.  *Direct Appeal*

    Petitioner appealed his judgment and sentence to the Washington Court of
Appeals. Dkt. 14-1 at 35 (Appellant's Opening Brief, Court of Appeals Cause No.
53771-1-II). In a part published, part unpublished opinion, *State v. Clark,* 17 Wn. App.2d
794 (2021), the Washington State Court of Appeals affirmed petitioner's convictions.
Dkt. 14-1 at 190 (Opinion, Court of Appeals Cause No. 53771-1-II).

    Petitioner filed a petition for review in the Washington Supreme Court. Dkt. 14-1
at 237 (Petition for Review, Supreme Court Cause No. 100163-1). On January 5, 2022,
the Washington Supreme Court denied review without comment. Dkt. 14-1 at 308
(Order Terminating Review, Supreme Court Cause No. 100163-1). The Washington
Court of Appeals issued its mandate on January 12, 2022. Dkt. 14-1 at 310 (Mandate,
Court of Appeals Cause No. 53771-1-II).

    2.  *Personal Restraint Petition*

    On November 22, 2022, petitioner filed a *pro se* personal restraint petition
("PRP") in the state court of appeals. Dkt. 14-2 at 2 (Personal Restraint Petition, Court
of Appeals Cause No. 57695-3-II).

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 3

1    In an unpublished opinion, 31 Wn. App. 2d 1047, 2024 WL 3159912 (June 25,

2 2024), the Washington Court of Appeals partially granted relief on petitioner's claim

3 regarding community custody conditions that were unrelated to his crime and denied the

4 remaining claims. Dkt. 14-3 at 84 (Opinion, Court of Appeals Cause No. 57695-3-II).

5    Petitioner moved for discretionary review in the Washington Supreme Court. Dkt.

6 14-3 at 113 (Motion for Discretionary Review of PRP, Supreme Court Cause No.

7 103293-5). The Washington Supreme Court denied discretionary review on December

8 4, 2024. Dkt. 14-3 at 156 (Order Denying Discretionary Review of PRP, Supreme Court

9 Cause No. 103293-5).

10    3. *Federal Petition*

11    Petitioner filed the federal habeas petition on December 13, 2024. Dkts. 1, 5.

12 Respondent filed an Answer. Dkt. 13. Petitioner filed a Traverse. Dkts. 21, 22. Petitioner

13 raises the following seven grounds for relief:

14        Claim 1: Trial counsel rendered ineffective assistance (IAC) by
         incorrectly advising Clark that his standard sentencing range was 78-96
15        months, when the actual range was 86-114 months. Dkt. 5, at 5.

16        Claim 2: Trial counsel rendered IAC by failing to interview
         witnesses, present evidence contradicting the State's timeline, investigate
17        the victim's memory issues, make timely objections, and subpoena
         pertinent records. Dkt. 5, at 7.

18
         Claim 3: The prosecutor violated Clark's due process rights by
19        improperly vouching for the timing of text messages between the victim
         and her friend without proper verification of when the messages were
20        actually sent. Dkt. 5, at 8.

21        Claim 4: The prosecutor committed misconduct during closing
         argument by improperly vouching for the victim's credibility, expressing
22        personal opinion about Clark's guilt, and implying that the jury needed to
         find the victim had lied in order to acquit Clark. Dkt. 5, at 10.

23

24

25

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 4

1

2
   Claim 5: Trial counsel rendered IAC by failing to move for a change of venue despite the absence of African-Americans in the 50-person jury pool and concerns expressed during voir dire about the racial demographics of Vancouver, Washington. Dkt. 5, at 12.

3

4
   Claim 6: Trial counsel rendered IAC by contradicting Clark's trial testimony during closing argument regarding Clark's reaction to breakfast portions. Dkt. 5, at 13.

5

6
   Claim 7. The trial court violated Clark's due process rights by admitting prejudicial forensic evidence at trial, specifically the blue towel evidence, despite the lack of DNA testing connecting Clark to the evidence. Dkt. 5, at 18.

7

8
  In the Answer, Respondent asserts petitioner failed to exhaust Grounds 2, 3, 4,

9
6, and 7 and these Grounds are now barred from federal review. Dkt. 13. Petitioner

10
concedes he did not exhaust Grounds 3, 6 and 7. Dkt. 22 at 57, 65.

11
  Respondent maintains that the state courts' adjudication of Grounds 1 and 5 was

12
not contrary to, or an unreasonable application of, clearly established federal law. *Id.*

13
## II.   DISCUSSION – EXHAUSTED CLAIMS

14
  <u>Grounds 1, 2 and 5</u>

15
  With respect to Claim 1, Claim 2 (limited to the allegations for which petitioner

16
exhausted state remedies – defense counsel's alleged failure to present contradictions

17
to the State's timeline and failure to object to the prosecutor's use of the text message

18
evidence between S.V. and Katie Davis), and Claim 5, respondent argues the state

19
courts' adjudication of these claims were not contrary to, or an unreasonable application

20
of, clearly established federal law.

21
  Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C.

22
§ 2254(d), a federal habeas corpus petition:

23
  [S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the

24

25
REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 5

claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under 28 U.S.C. § 2254(d)(2), there is no AEDPA deference if the state court's procedures for fact-finding were inadequate. *Panetti v. Quarterman*, 551 U.S. 930, 948-954 (2007) (Petitioner showed the state court's process was an inadequate opportunity to be heard concerning competency under *Ford v. Wainwright,* 477 U.S. 399 (1986), therefore AEDPA deference to the Court's findings did not apply). "A petitioner challenging the adequacy of the fact-finding process must show no appellate court could reasonably hold 'that the state court's fact-finding process was adequate.'" *Prescott v. Santoro,* 53 F.4th 470, 479 (9th Cir. 2022) (*quoting Lambert v. Blodgett,* 393 F.3d 943, 972 (9th Cir. 2004) (internal quotation omitted)). If a state court fails to make a finding of fact where it was obligated to do so, or unreasonably decides an evidentiary hearing is unnecessary, only then would the federal court find the fact-finding process unreasonable under 28 U.S.C. § 2254(d)(2) and expand the record and hold an evidentiary hearing. *Prescott*, 53 F.4th at 480-481.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

1    Under § 2254(d)(1), "a federal habeas court may not issue the writ simply

2  because that court concludes in its independent judgment that the relevant state-court

3  decision applied clearly established federal law erroneously or incorrectly. Rather, that

4  application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S.

5  63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the

6  state court identifies the correct governing legal rule from [Supreme Court] cases but

7  unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529

8  U.S. at 407. In addition, a state court decision involves an unreasonable application of

9  Supreme Court precedent "'if the state court either unreasonably extends a legal

10  principle from [Supreme Court] precedent to a new context where it should not apply or

11  unreasonably refuses to extend that principle to a new context where it should apply.'"

12  *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

13    Review of state court decisions under § 2254(d)(1) is "limited to the record that

14  was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*,

15  563 U.S. 170, 180-81 (2011). If the state court's decision is substantially different from

16  the relevant precedent of the United States Supreme Court, or if the state court's

17  holding is a different result than the Supreme Court's holding on a set of facts

18  indistinguishable from facts in the Supreme Court precedent, then under § 2254(d)(1), it

19  is "contrary to" clearly established federal law. *Williams v. Taylor,* 529 U.S. 362, 405-

20  406 (2000). "At bottom, 'the 'contrary to' prong requires a direct and irreconcilable

21  conflict with Supreme Court precedent.'" *Hampton v. Shinn,* 143 F.4th 1047, 1077 (9th

22  Cir. 2025) (quoting *Murray v. Schriro,* 745 F.3d 984, 997 (9th Cir. 2014).

23

24

25

Clearly established federal law is defined, for purposes of AEDPA, as holdings (not dicta) of the United States Supreme Court, in existence as of the time of the relevant state court decision. *Lockyer v. Andrade,* 538 U.S. 63, 71 (2003). Opinions of United States Courts of Appeals are not within this definition, it is solely Supreme Court opinions that are within the definition of clearly established federal law under AEDPA. *Marshall v. Rodgers,* 569 U.S. 58, 64 (2013).

When the requirements set forth in § 2254(d)(1) or (d)(2) are satisfied "a federal court is relieved of AEDPA deference" and must consider the claim *de novo. Panetti v. Quarterman,* 551 U.S. 930, 953-954 (2007).

## A.  Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. A defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. In

1 order to prevail on an ineffective assistance of counsel claim, a petitioner must

2 overcome the presumption that counsel's challenged actions might be considered

3 sound trial strategy. *Id*.

4      The second prong of the *Strickland* test requires a showing of actual prejudice

5 related to counsel's performance. In order to establish prejudice, a petitioner "must

6 show that there is a reasonable probability that, but for counsel's unprofessional errors,

7 the result of the proceeding would have been different. A reasonable probability is a

8 probability sufficient to undermine confidence in the outcome." *Id*. at 694. This test does

9 not focus on the defendant's subjective contention, but instead employs an objective

10 standard. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

11      When considering an ineffective assistance of counsel claim on federal habeas

12 review, "[t]he pivotal question is whether the state court's application of the *Strickland*

13 standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Under this

14 "doubly deferential" standard, "a federal court may grant relief only if *every* 'fairminded

15 juris[t]' would agree that *every* reasonable lawyer would have made a different

16 decision." *Dunn v. Reeves*, 594 U.S. 731, 739–40 (2021) (quoting *Harrington*, 562 U.S.

17 at 101) (emphasis in original). As the Supreme Court explained in *Harrington*, "[a] state

18 court must be granted a deference and latitude that are not in operation when the case

19 involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.

20 "[E]ven if there is reason to think that [trial] counsel's conduct 'was far from exemplary,'

21 a court still may not grant relief if '[t]he record does not reveal' that counsel took an

22 approach that no competent lawyer would have chosen." *Dunn*, 594 U.S. at 739

23 (quoting *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013)).

24

25

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 9

1                        1.   Ground 1

2           Petitioner alleges his trial counsel's performance was deficient because he was

3 misinformed about the standard sentencing range as charged prior to trial.

4           Here, the state court of appeals considered petitioner's claim that his trial counsel

5 was ineffective for misinforming petitioner on the sentencing range during the plea

6 process. The court of appeals stated (31 Wn. App. 2d 1047 at *7-*8):

> [T]he primary inquiry is whether a rational person in Clark's situation would have more likely than not taken the State's plea offer of 6-12 months had that person known his standard sentencing range was 86-114 months instead of 78-96 months. Buckman, 190 Wn.2d at 69. Clark needs to show something more than simply the bare allegation that he would have taken the State's offer had he been properly informed. Id.

> The record shows that trial counsel contacted Clark via telephone to discuss the State's May 10, 2019 plea offer, which comprised of pleading guilty to third degree rape with a potential minimum standard sentencing range of 6-12 months. The record also shows that Clark steadfastly refused to plead guilty to any form of a sex offense, regardless of the potential sentencing ranges. Indeed, in Clark's own words, the most important thing to Clark was to "remov[e] [] any and all sex offense charges" and only then would he be willing to take the State's offer. Suppl. Reply Br. of Pet'r, Appx. A at 37. The only plea offers the State made required Clark to plead guilty to sex offenses.

> In his reply brief, Clark disputes that he told his trial counsel that he would never plead guilty to a sex offense. However, his assertion is belied by his written statement in his bar grievance, which stated that when he was offered the May 10 plea deal, he would only be willing to plead guilty "if the state dropped the third degree rape or any type of sex offense charges." Suppl. Reply Br. of Pet'r, Appx. A at 37.

> Clark claims he was prejudiced because he was denied the ability to make an informed decision. However, Clark fails to show anything beyond the bald assertion that he would have taken the State's plea offer. Clark makes much of what trial counsel may or may not have told him. But even accepting Clark's version of the interaction between himself and trial counsel, nothing in the record shows that Clark was willing to accept any plea offer that included a sex offense.

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 10

1

2    Because Clark fails to show anything more than the bare assertion that he
      would have taken the State's May 10, 2019 plea offer had he been
3    properly informed of his potential sentencing range and because the
      record shows that the most important thing to Clark was to not plead guilty
4    to a sex offense, we hold that Clark cannot establish prejudice.
      Accordingly, Clark's claim of ineffective assistance of counsel fails and we
5    need not address whether trial counsel's performance was deficient.
      *Drath*, 7 Wn. App. 2d at 266; *Crace*, 174 Wn.2d at 847.

6          The state court resolved petitioner's claim on the prejudice prong. *See Strickland*,

7    466 U.S. at 697 (courts may consider either prong of the *Strickland* test first and need

8    not address both prongs if defendant fails on one). In the context of a guilty plea, a

9    defendant must show the outcome of the guilty plea process would have been different

10   with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Strickland*).

11         In *Lafler*, the Supreme Court analyzed an ineffective assistance of counsel issue

12   in the context of the defendant's rejection of a plea offer:

13         Having to stand trial, not choosing to waive it, is the prejudice alleged. In
      these circumstances a defendant must show that but for the ineffective
14   advice of counsel there is a reasonable probability that the plea offer
      would have been presented to the court (i.e., that the defendant would
15   have accepted the plea and the prosecution would not have withdrawn it
      in light of intervening circumstances), that the court would have accepted
16   its terms, and that the conviction or sentence, or both, under the offer's
      terms would have been less severe than under the judgment and
17   sentence that in fact were imposed.

18   *Lafler*, 566 U.S. at 163.

19         Here, petitioner has not demonstrated that it was "necessarily unreasonable" for

20   the state court to have determined that petitioner failed to establish prejudice. *Cullen v.*

21   *Pinholster*, 563 U.S. 170, 190 (2011).

22         Petitioner alleges trial counsel repeatedly told him that the potential sentencing

23   range, if convicted of the charges, was 78-96 months; after being found guilty by the

24   jury, the trial court applied a standard sentencing range of 86-114 months. Petitioner

25

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 11

claims actual prejudice occurred because had he known the trial court would apply this

sentencing range, he would have accepted the third plea offer made by the State before

trial – an offer that would entail a potential sentencing range of 6-12 months. Dkt. 5,

Federal Habeas Corpus Petition, at 5. He asserts "just because Clark always

maintained his innocence, does not mean that he would have never pled guilty and

accepted a plea offer." Dkt. 22, Traverse, at 36.

The State charged petitioner with "rape in the second degree, assault in the

fourth degree, and tampering with a witness, all with domestic violence designations."

*State v. Clark,* 17 Wn. App. 2d at 796. The jury returned verdicts of guilty on the first two

counts, but found him not guilty of tampering with a witness. *Id.* The trial court imposed

a sentence with minimum confinement of 114 months, at the high end of the sentencing

range, as part of an indeterminant sentence under RCW 9.94A.507. *Id.*  at 797.

The Washington Court of Appeals, in rejecting petitioner's PRP, determined that

the record showed "trial counsel contacted Clark via telephone to discuss the State's

May 10, 2019 plea offer", which was an offer of pleading to "third degree rape with a

potential minimum standard sentencing range of 6-12 months" and that petitioner

"steadfastly refused to plead guilty to any form of a sex offense, regardless of the

potential sentencing ranges." 31 Wn. App. 2d 1047 at *7.

In trial counsel's response to the bar complaint petitioner filed, trial counsel

explained that petitioner was offered three plea deals from the State, and each plea

offer required petitioner to plead guilty to a felony sex crime. Dkt. 14-2, Written

Response to Review committee of the Disciplinary Board Washington State Bar

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 12

1    Association, by Christopher D. Ramsay, at 287. Mr. Ramsay stated that petitioner

2    always maintained he was innocent. *Id.* at 284.

3         Mr. Ramsay stated, if petitioner had accepted the last offer from the State,

4    petitioner would have had to plead guilty to third degree rape, domestic violence, with a

5    potential standard sentencing range of 6-12 months. *Id.* at 299. Trial counsel stated

6    that petitioner was not interested in any of the State's offers because every offer

7    required him to plead guilty to a felony; petitioner told his lawyer that the only type of

8    plea he would consider was "a misdemeanor non-sex offense". *Id.* at 289. According to

9    Mr. Ramsay, petitioner "was disinterested in any offer that required that he plead guilty

10   to a sex crime of any kind." *Id.* at 284. Petitioner did not want the stigma of a sex crime

11   conviction and did not want to register as a sex offender. *Id.* at 288. Mr. Ramsay also

12   stated that during sentencing, the trial count determined fourth degree assault with

13   domestic violence counted as a point for criminal history, and this led to an assessment

14   by the court that the standard sentencing range for second degree rape with domestic

15   violence, and assault fourth degree with domestic violence, would be 86-114 months.

16   *Id.* at 296.

17        Petitioner's claim that he would have accepted the plea offer is contradicted by

18   his own statements where he claimed, "I was especially adamant about not raping the

19   plaintiff, and the removal of any and all sex offense charges were the most important

20   thing to me," and "I would be willing to plead guilty and accept the year in county jail, if

21   the state dropped the third degree rape or any type of sex offense charges". Dkt. 14-3 at

22   29, 58. *See also Lee v. U.S.*, 528 U.S. 357, 359 (2017) ("[c]ourts should not upset a

23

24

25

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 13

1    plea [or verdict] solely because of post hoc assertions from a defendant about how he

2    would have pleaded but for his attorney's deficiencies.").

3            To be an unreasonable application of Supreme Court precedent, the state court's

4    decision must be objectively unreasonable. *Lockyear v. Andrade,* 538 U.S. 63, 76

5    (2003). The petitioner must show that "the state court's ruling on the claim being

6    presented in federal court was so lacking in justification that there was an error well

7    understood and comprehended in existing law beyond any possibility for fairminded

8    disagreement." *Harrington v. Richter,* 562 U.S. 86, 103 (2011). Under AEDPA, the

9    federal court does not apply the *Strickland* standard de novo; "[t]he pivotal question is

10   whether the state court's application of the *Strickland* standard was unreasonable."

11   *Harrington v. Richter,* at 101.

12           The state court's application of the *Lafler* and *Strickland* standards was not

13   unreasonable. Therefore, this ground for relief should be denied.

14                              2.   Ground 2

15           To succeed on a claim of ineffective assistance of counsel, petitioner must

16   demonstrate both that his counsel's representation fell below an objective standard of

17   reasonableness, and that he was prejudiced as a result. *Strickland*, 466 U.S. at 687.

18           Petitioner argues that he received ineffective assistance when his trial counsel

19   failed to object to the admission of the text messages on the grounds that the

20   timestamps were unreliable.

21           The state court of appeals noted "that trial counsel believed at least some of the

22   messages 'cast doubt on [S.V.'s] credibility,' which is a legitimate trial strategy. 31 Wn.

23   App. 2d 1047 at *12. The court further recognized that the jury heard evidence that S.V.

24

25

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 14

did not immediately provide her text messages to law enforcement and that law

enforcement retrieved the full text message chain from Katie Davis a year later. The

court also found that the evidence at trial showed the messages between S.V. and Katie

Davis were exchanged prior to petitioner's arrest, which was consistent with the

testimony given at trial. *Id.*

Counsel's "strategic choices made after thorough investigation of law and facts"

are "virtually unchallengeable." *Strickland*, 466 U.S. at 690.

The state court's determination was not contrary to or an unreasonable

application of clearly established Supreme Court law or based upon an unreasonable

determination of facts of record. The petitioner must show that "the state court's ruling

on the claim being presented in federal court was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." *Harrington v. Richter,* at 103. The Court recommends that

this ground for relief be denied.

### 3.  Ground 5

Petitioner alleges his counsel rendered ineffective assistance by failing to move

for a change of venue despite the absence of Black individuals in the jury pool.

Petitioner states trial counsel "should have been curious" by that fact. Dkt. 22 at 63.

The state court of appeals addressed petitioner's claim in its decision on direct
appeal as follows:

> We acknowledge, and cases have confirmed, that bias is a societal
> problem imbedded in our justice system. See State v. Behre, 193 Wn.2d
> 647, 657-58, 444 P.3d 1172 (2019). However, Clark makes a novel
> argument and he fails to argue his case in the framework on which his
> claim of error is presented: ineffective assistance of counsel. Moreover,
> Clark would have us go beyond the holdings of any case to conclude that
> counsel rendered ineffective assistance by failing to take action that might

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 15

1  increase his chances of having a Black person in the jury venire. Batson v.
   Kentucky, 476 U.S. 79, 85, 106 S. Ct. 1712, 1721, 90 L. Ed. 2d 69 (1986).
2  We recognize the impact of implicit biases, and although the cases Clark
   relies on compellingly show this impact, they otherwise do not support a
3  finding of ineffective assistance in this case. His argument fails for three
   reasons.
4
   First, it is undisputed that Clark's argument is a novel legal theory. And
5  Clark's counsel cannot be ineffective for his "failure to raise novel legal
   theories or arguments." Brown, 159 Wn. App. at 371. Indeed, Clark is
6  unable to cite to any case even discussing his theory.
7
   Second, Clark does not propose a workable legal test. There is no way to
8  determine, for example, what portion of a county's population must be of
   the defendant's constitutionally cognizable racial group for there to be a
9  "realistic possibility" that at least one person of the same group might
   appear in the jury venire.
10
   Third, counsel thoroughly discussed issues of implicit bias during jury
11 selection. Clark's defense counsel explained that race was a potential
   issue and asked jurors to make sure Clark received a fair trial, and "got
12 everyone's word" to make sure that racial bias didn't enter into their
   decision. 2 RP at 238-43. He discussed unconscious bias. One juror
13 stated that they would speak out if anyone expressed an opinion based on
   bias in deliberations. Another explicitly stated it was their obligation to
14 overcome racial bias. At the end of this discussion, defense counsel
   summarized by stating, "it sounds like everybody is – agreed that they're
15 going to be very careful about reviewing evidence in this case and making
   sure that racial bias doesn't enter into it – do I have everybody's word on
16 that? Okay. Thank you." 2 RP at 243. Clark cannot show his counsel
   performed deficiently because the challenged action goes to a legitimate
17 trial strategy or tactic. State v. Kolesnik, 146 Wn. App. 790, 801, 192 P.3d
   937 (2008).
18
   *State v. Clark,* 17 Wn. App. 2d 794, 799-800.
19
   Petitioner cites to *Batson v. Kentucky,* 476 U.S. 79 (1986) to support his
20
argument that his trial counsel should have moved to change the venue of his trial. The
21
Supreme Court's holding in *Batson* did not involve a change of venue; the Court in
22
Batson was reviewing whether the peremptory strike applied to a juror was racially
23
motivated and violated the Fourteenth Amendment right to Equal Protection.
24
25
REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 16

Petitioner has not demonstrated that trial counsel's decision not to make a motion for change of venue meets either the performance or prejudice prong of *Strickland*, 466 U.S. at 694. The issue before this Court is whether the state court reasonably concluded that trial counsel's decision to address racial concerns through voir dire and not through a change of venue was a legitimate trial strategy that did not constitute deficient performance. As the state court of appeals found, trial counsel was cognizant of the fact the petitioner was the only Black person in the courtroom and specifically questioned jurors on racial bias and discussed unconscious bias.

The petitioner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* at 103. The Court presumes the state court made a reasonable determination, and the Court's presumption that trial counsel acted effectively is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).

Accordingly, this ground for relief should be denied.

### III.    THE REMAINING CLAIMS ARE UNEXHAUSTED AND PROCEDURALLY BARRED (Grounds 2,3, 4, 6, and 7)

Respondent maintains that petitioner failed to exhaust Grounds 2, 3, 4, 6, and 7 raised in the Petition and these Grounds are now procedurally barred from federal habeas corpus review. Dkt. 13. Petitioner concedes that he did not exhaust Grounds 3, 6 and 7. Dkt. 22 at 57, 65.

1

*1.  Exhaustion of State Remedies*

2    A state prisoner is required to exhaust all available state court remedies before

3 seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion

4 requirement is a matter of comity, intended to afford the state courts "an initial

5 opportunity to pass upon and correct alleged violations of its prisoners' federal rights."

6 *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations

7 omitted). To provide the state courts with the requisite "opportunity" to consider his

8 federal claims, a prisoner must "fairly present" his claims to each appropriate state court

9 for review, including a state supreme court with powers of discretionary review. *Baldwin*

10 *v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995),

11 and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

12    Full and fair presentation of claims to the state's highest court requires "full

13 factual development" of the claims in that forum. *Kenney v. Tamayo-Reyes*, 504 U.S. 1,

14 8 (1992). It is not enough if all the facts necessary to support the federal claim were

15 before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513

16 U.S. at 365–66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)).

17 A petitioner must include reference to a specific federal constitutional guarantee, as well

18 as a statement of the facts entitling the petitioner to relief. *Gray v. Netherland*, 518 U.S.

19 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). A

20 petitioner bears the burden of proving he has exhausted available state remedies and

21 retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v.*

22 *Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

23

24

25

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 18

a.    *Grounds Raised in State and Federal Proceedings*

In his direct appeal, petitioner raised the following claims to the Washington Court of Appeals:

1. Trial counsel rendered ineffective assistance by failing to move for a change of venue to a county with a higher Black population, which was essential given the racial demographics of Clark County and the absence of any Black jurors in the venire. Dkt. 14-1 at 49.

2. The prosecutor committed misconduct during closing argument by improperly vouching for the victim's credibility when stating that the victim's "testimony yesterday was genuine." *Id.* at 65.

3. The prosecutor committed misconduct during closing argument by expressing personal opinions about Clark's guilt and implying that the jury needed to find the victim had lied to acquit Clark. *Id.*

4. Trial counsel rendered ineffective assistance based on statements made during arguments over motions in limine that allegedly advocated for the victim's position rather than Clark's. *Id.* at 84.

5. Trial counsel rendered ineffective assistance by contradicting Clark's trial testimony during closing argument regarding Clark's reaction to breakfast portions. *Id.*

6. Trial counsel rendered ineffective assistance by requesting a jury instruction concerning consent (Instruction Number 10) that allegedly impermissibly shifted the burden of proof. *Id.*

7. Trial counsel rendered ineffective assistance by failing to cross-examine the State's expert witness about the lack of DNA evidence connecting Clark to the crime. *Id.*

8. Trial counsel rendered ineffective assistance by failing to question and impeach the victim regarding her medical condition and related memory issues. *Id.*

9. The trial court erred in admitting prejudicial forensic evidence at trial, specifically the blue towel evidence, despite the lack of DNA testing connecting Clark to the evidence. *Id.*

10. The trial court erred in instructing the jury on the issue of consent through Instruction Number 10. *Id.*

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 19

11.  The prosecutor committed misconduct during the sentencing hearing by making improper remarks about Clark's character. *Id.*

Following the decision affirming his conviction on direct appeal, petitioner filed a petition for review (Dkt. 14-1 at 237) with the Washington Supreme Court raising the following grounds:

1. Clark received ineffective assistance of counsel (IAC) when his trial attorney failed to move for a change of venue to a county with a more racially diverse jury pool, which was essential given:

    i.   He is a Black man accused of raping a white woman
    ii.  Clark County's demographics (2.4% Black population)
    iii. The absence of any Black jurors in the venire
    iv.  The potential for implicit and explicit racial bias affecting the fairness of his trial .

2. The prosecutor committed misconduct through improper vouching for the victim (S.V.), specifically when she stated during closing arguments: "Now you are the sole judges of credibility but I would submit to you that [S.V.'s] testimony yesterday was genuine."

3. The prosecutor committed misconduct through other statements during closing arguments that expressed personal opinions about Clark's guilt and implicitly suggested the jury had to find that S.V. lied or was mistaken to acquit him.

Dkt. 14-1, Petition for Review in Case No. 53771-1-II, at 246-261. The Washington Supreme Court denied review on January 5, 2022, and the Washington Court of Appeals filed the mandate on January 12, 2022.. Dkt. 14-1 at 308-310.

In his PRP, petitioner raised the following grounds to the state court of appeals:

1. Petitioner received ineffective assistance of appellate counsel when his appellate attorney failed to raise on direct appeal the claim that trial counsel repeatedly provided incorrect sentencing guidelines prior to trial and after conviction. Dkt. 14-2 at 2, 7, 13.

2. Petitioner received ineffective assistance of trial counsel when his attorney consistently misinformed him about the standard sentencing range he faced if convicted, advising him he faced 78-96 months when the actual

range was 86- 114 months, which prejudiced him because he rejected the State's plea offer of 6-12 months for third-degree rape based on this misinformation. *Id.* at 10, 13-24.

3. The trial court erred by imposing unauthorized community custody conditions prohibiting possession or consumption of alcohol and marijuana, prohibiting entry into establishments where alcohol is the primary sale item, and requiring submission to urine and/or breath testing, as these conditions were not crime-related. *Id.* at 25-26.

4. The prosecutor committed misconduct by knowingly introducing questionable evidence regarding text messages between the victim and her friend and making improper statements about the timing of these messages during closing arguments, falsely representing them as sent "in the middle of the night" when evidence contradicted this timeline. *Id.* at 26-39.

5. Petitioner received ineffective assistance of trial counsel when his attorney failed to present evidence contradicting the prosecution's timeline of events, failed to investigate and present evidence of the victim's memory problems due to a medical condition, failed to make timely objections to prosecution evidence, failed to subpoena pertinent records including phone records, and failed to interview witnesses including Katie Davis who could have contradicted the State's timeline. *Id.* at 39.

After the state court of appeals denied Petitioner's PRP, Petitioner sought discretionary review with the state supreme court, raising the following issues:

1. The Court of Appeals erred in rejecting Clark's IAC claim regarding trial counsel's failure to properly advise him about his sentencing range. Clark claimed his trial counsel incorrectly advised him that his sentencing range was 78-96 months when his actual range was 86-114 months, and that this error prejudiced him because he would have accepted the State's plea offer of 6-12 months had he known his correct sentencing exposure. Dkt. 14-3 at 133.

2. The Court of Appeals erred in finding that Clark failed to establish prejudice for his IAC claim. Clark specifically argued that the court's decision conflicts with Division III's decision in In the Matter of McCready and Division II's decision in Drath. He contended the court improperly relied on his statements in a bar complaint that he would not plead to a sex offense, failing to consider that those statements reflected his position without knowing his true sentencing exposure. Ex. 20 at 4-51 (first motion); Ex. 20 at 23 (second motion). *Id.* at 134.

3.   The Court of Appeals erred under state law in rejecting claim regarding the State's presentation of text message evidence between the victim and her friend. Clark asserted that the prosecutor improperly vouched for the truthfulness of the messages and misrepresented their timing during closing arguments, falsely claiming the victim texted her friend "in the middle of the night" after the assault when evidence contradicted this timeline. *Id.* at 118.

4.   Whether this Court should grant review because Division II's decision constitutes an issue of substantial public interest in that it gives an overly expansive view of the Washington Supreme Court's decision in State v. Buckman, 190 Wn.2d 51, 409 P.3d 193 (2018). *Id.* at 134.

5.   Whether this Court should grant review because Division II's decision conflicts with Division III's decision in In the Matter of McCready, 100 Wn. App. 259, 263, 996 P.2d 658 (2000). *Id.*

In the federal habeas corpus Petition, petitioner raises seven grounds for relief, set forth in detail above. As relevant here, petitioner asserts the following with respect to Grounds 2, 3, 4, 6, and 7:

Claim 2: Trial counsel rendered IAC by failing to interview witnesses, present evidence contradicting the State's timeline, investigate the victim's memory issues, make timely objections, and subpoena pertinent records. Dkt. 5 at 7.

Claim 3: The prosecutor violated Clark's due process rights by improperly vouching for the timing of text messages between the victim and her friend without proper verification of when the messages were actually sent. *Id.* at 8.

Claim 4: The prosecutor committed misconduct during closing argument by improperly vouching for the victim's credibility, expressing personal opinion about Clark's guilt, and implying that the jury needed to find the victim had lied in order to acquit Clark. *Id.* at 10.

Claim 6: Trial counsel rendered IAC by contradicting Clark's trial testimony during closing argument regarding Clark's reaction to breakfast portions. *Id.* at 13.

Claim 7: The trial court violated Clark's due process rights by admitting prejudicial forensic evidence at trial, specifically the blue towel evidence, despite the lack of DNA testing connecting Clark to the evidence. *Id.* at 18.

With respect to Grounds 2, 6 and 7, petitioner did not raise these specific claims when seeking review before the Washington Supreme Court.

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

In petitioner's motion for discretionary review to the Washington Supreme Court (Dkt. 14-3 at 129-152) he arguably raised an ineffective assistance of counsel claim with respect to counsel's alleged failure to present contradictions to the State's timeline and making timely objections to the use of the text message evidence between S.V. and Katie Davis. Dkt. 14-3, (Ex. 20 hand-written brief) at 114, 116-122, 125-126.

But he did not exhaust state remedies for the remainder of the allegations in Ground 2, of the allegations in Grounds 6 and 7 i.e., that counsel failed to investigate S.V.'s memory issues and subpoena certain records. Petitioner did not raise these specific facts when seeking review before the Washington Supreme Court. Thus, he did not give the state courts a full and fair opportunity to determine if a federal constitutional violation occurred. *See Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992) (finding claims were unexhausted when they were not raised on every level of direct review); *Casey v. Moore*, 386 F.3d 896, 916–18 (9th Cir. 2004) (finding claim was not fairly presented to the state court when the claim was raised for the first and only time upon petitioning for discretionary review to the state supreme court); *O'Haver v. Ruiz*, No. 3:15-cv-05797-RBL-JRC, 2016 WL 1019264, *4 (W.D. Wash. Feb. 11, 2016) ("A petitioner must properly raise a habeas claim at every level of the state courts' review."). Therefore, Grounds 2, 6, and 7 were not properly exhausted.

As to Grounds 3 and 4, the Court should find petitioner failed to properly exhaust these claims because he did not "fairly present" them at each level in the state court system as violations of his federal constitutional rights. The state courts have been given a sufficient opportunity to hear an issue, for purposes of exhaustion, when the petitioner has presented the state court with the issue's factual and legal basis. *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999); *see also Kyzar v. Ryan*, 780 F.3d 940,

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 23

947 (9th Cir. 2015) ("In order to fairly present an issue to a state court, a [habeas] petitioner must present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief." (quotation marks and citation omitted)); *Scott v. Schriro*, 567 F.3d 573, 582–83 (9th Cir. 2009) (same).

In Grounds 3 and 4 in petitioner's federal habeas corpus petition, petitioner claims the prosecutor violated his due process rights and acted improperly when the prosecutor vouched for the timing of the text messages between the victim and her friend and when the prosecutor expressed a personal opinion about petitioner's guilt during closing argument. Petitioner did not make it clear in his briefs filed at each level in the state court system, however, that he was claiming violations of the federal constitution.

The Court concludes that Grounds 3 and 4 are unexhausted as petitioner failed to fairly present his claim as a federal constitutional issue to the state courts.

B. Procedural Default

Procedural default is distinct from exhaustion of state remedies. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal claim when it is clear the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear the state court would hold the claim procedurally barred. *Id.* at 1230–31 (citations omitted). If a state procedural rule would now preclude the petitioner from raising his claim at the state level, the claim is considered "procedurally defaulted" and the federal courts are barred from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).

Grounds 2, 3, 4, 6 and 7 are procedurally defaulted because, if petitioner attempted to present these claims in a subsequent PRP, the state court would find the claims barred by Washington State law. Washington State imposes a one-year statute of limitations on filing a PRP or other post-conviction challenges. RCW 10.73.090.

The state court of appeals issued a mandate finalizing petitioner's direct appeal on January 12, 2022. Dkt. 14-1 at 310. Thus, the time to file a petition or motion for post-conviction relief expired in January 2023, one year after petitioner's direct appeal became final. *See* RCW 10.73.090(1), (3)(b). As the one-year statute of limitations has passed, petitioner is barred from filing a subsequent PRP. *See id.* at (1); *see also Shumway v. Payne*, 223 F.3d 982, 988 n.22 (9th Cir. 2000) (RCW 10.73.090 has been found by the Ninth Circuit to be an independent and adequate state law barring federal habeas review).

And, under Washington State law, the state court of appeals will not consider a second or successive PRP unless the petitioner certifies he has not filed a previous petition on similar grounds and shows good cause as to why he did not raise the grounds in the previous PRP. See RCW 10.73.140. Petitioner has not presented facts to establish good cause for his failure to raise Grounds 2, 3, 4, 6, and 7 at each level of his PRP. Therefore, these grounds raised in the Petition are also subject to an implied procedural bar because the grounds would be "prohibited by an independent, adequate, and mandatory rule of state procedure, RCW 10.73.140, making a return to state court futile." *See Bolar v. Luna*, No. 2:05-cv-02029-TSZ-JPD, 2007 WL 1103933, at *11 (W.D. Wash. April 10, 2007).

1

C. Overcoming Procedural Default

2

The procedural default will be excused and a petitioner will be entitled to federal

3

habeas corpus review if he "can demonstrate cause for the default and actual prejudice

4

as a result of the alleged violation of federal law, or demonstrate that failure to consider

5

the claims will result in a fundamental miscarriage of justice[.]" *Boyd v. Thompson*, 147

6

F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750); *see also Shinn v.*

7

*Ramirez*, 596 U.S. 366, 379 (2022) ("Out of respect for finality, comity, and the orderly

8

administration of justice, ... federal courts may excuse procedural default only if a

9

prisoner can demonstrate cause for the default and actual prejudice as a result of the

10

alleged violation of federal law.") (internal quotations and citations omitted).

11

To establish "cause," a petitioner must show some objective factor external to the

12

defense prevented him from complying with the state's procedural rule. *Coleman*, 501

13

U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show "prejudice," a

14

petitioner "must shoulder the burden of showing, not merely that the errors at his trial

15

created a possibility of prejudice, but that they worked to his actual and substantial

16

disadvantage, infecting his entire trial with error of constitutional dimensions." *United*

17

*States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original); *see also Shinn*, 596

18

U.S. at 379–80 (citations omitted).

19

Only in an "extraordinary case" may the habeas court grant the writ without a

20

showing of cause and prejudice to correct a "fundamental miscarriage of justice" where

21

a constitutional violation has resulted in the conviction of a defendant who is actually

22

innocent. *Murray*, 477 U.S. at 495–96. To demonstrate he suffered a fundamental

23

miscarriage of justice, viewing all the evidence in light of new reliable evidence, the

24

petitioner must show "it is more likely than not that no reasonable juror would have

25

found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, petitioner has failed to establish cause and prejudice to overcome the default. Petitioner fails to show some objective factor external to his defense prevented him from complying with the State's procedural bar rule. Petitioner also fails to show any alleged trial errors worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions, and thus has not shown prejudice. Furthermore, petitioner has not provided new, reliable evidence showing he is actually innocent, and, therefore, this is not the kind of extraordinary instance where this Court should review the claim despite the absence of a showing of cause.

Petitioner failed to show cause or prejudice to excuse his procedural default; therefore, the Court is barred from reviewing Grounds 2, 3, 4, 6 and 7 on the merits. Accordingly, the undersigned finds petitioner is not entitled to relief as to Grounds 2, 3, 4, 6 and 7 and recommends these Grounds be dismissed. *See Casey v. Moore*, 386 F.3d 896 (9th Cir. 2004).

## IV.    EVIDENTIARY HEARING

An evidentiary hearing "is required when the petitioner's allegations, if proven, would establish the right to relief," but it "is *not* required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (emphasis in the original). "[W]hen issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Totten*¸ 137 F.3d at 1176; *United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1986) (an evidentiary hearing is not required if the motion, files and records of the case conclusively show petitioner is entitled to no relief).

1    "[A]n evidentiary hearing . . . is required where the petitioner's allegations, if true,

2    would entitle him to relief, and the petitioner has satisfied the requirements [the

3    Supreme Court set forth in] *Townsend v. Sain*, 372 U.S. 293 (1963)." *Stanley v. Schriro*,

4    598 F.3d 612, 624 (9th Cir. 2010). Under those requirements, an evidentiary hearing is

5    justified if "(1) the merits of the factual dispute were not resolved in the state hearing; (2)

6    the state factual determination is not fairly supported by the records as a whole; (3) the

7    fact-finding procedure employed by the state court was not adequate to afford a full and

8    fair hearing; (4) there is a substantial allegation of newly discovered evidence; [(5) the

9    material facts were not adequately developed at the state-court hearing;] or (6) for any

10   reason it appears that the state trier of fact did not afford the habeas applicant a full and

11   fair fact hearing." *Townsend v. Sain,* at 313 (overruled on other grounds in *Keeney v.*

12   *Tomayo-Reyes,* 504 U.S. 1, 6-7 (1992)[1]); *Stanley*, 598 F.3d at 624.

13   If the petitioner "failed to develop" the factual bases in the state court, the United

14   States District Court "shall not" hold an evidentiary hearing on the claim unless the

15   petitioner shows that:

16   (A) the claim relies on--

17   (i) a new rule of constitutional law, made retroactive to cases on collateral
     review by the Supreme Court, that was previously unavailable; or

18
19   (ii) a factual predicate that could not have been previously discovered through
     the exercise of due diligence; and

20   (B) the facts underlying the claim would be sufficient to establish by clear and
     convincing evidence that but for constitutional error, no reasonable factfinder
     would have found the applicant guilty of the underlying offense.

21

22   [1] The fifth requirement is bracketed, because in *Keeney,* the Court removed the fifth
     requirement, but AEDPA displaced the decision in *Keeney. See* Eve Brensike Primus, Equitable
23   Gateways: Toward Expanded Federal Habeas Corpus Review of State-Court Criminal
     Convictions, 61 Ariz. L. Rev. 291, 313  n.161 (2019). Yet if AEDPA does not apply, then the
24   remaining *Townsend* requirements continue to exist.

25

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 28

28 .S.C. § 2254(e)(2).

The Court should hold that it is not necessary to hold an evidentiary hearing in this case because, as discussed in this Report and Recommendation, Petitioner's claim may be resolved on the existing state court record. And, because there is no reason for the Court to hold an evidentiary hearing, the petitioner's motion to appoint counsel (Dkt. 23) is DENIED.

## V.    CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of petitioner's claims or would conclude the issue presented in the Petition should proceed further. Therefore, the Court concludes petitioner is not entitled to a certificate of appealability with respect to the Petition.

## VI.    CONCLUSION

For the above stated reasons, the Court concludes petitioner has not exhausted Grounds 2, 3, 4, 6 and 7, and with respect to Grounds 1 and 5, petitioner has not shown

1    the state courts' adjudication of the sole ground raised in the Petition was contrary to, or

2    an unreasonable application of, clearly established federal law. Additionally, an

3    evidentiary hearing is not necessary. Therefore, the Court recommends the Petition be

4    **DENIED** and a certificate of appealability not be issued.

5          Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the

6    parties shall have fourteen (14) days from service of this report to file written objections.

7    *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

8    objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. §

9    636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See*

10   *Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th

11   Cir. 2012) (citations omitted).

12         Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set

13   the matter for consideration on November 19, 2025, as noted in the caption.

14

          Dated this 4th day of November, 2025.

15

16

17

18                                              Theresa L. Fricke
                                                United States Magistrate Judge
19

20

21

22

23

24

25

REPORT AND RECOMMENDATION, AND ORDER
DENYING APPOINTMENT OF COUNSEL - 30